**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 11, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

CRAIG GABALDON,

    Plaintiff - Appellant,

v.

NEW MEXICO STATE POLICE; KEVIN
SMITH, in his individual capacity;
KURTIS WARD, in his individual
capacity,

    Defendants - Appellees.

No. 24-2104

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:23-CV-00035-JCH-SCY)**

_____

A. Blair Dunn, Western Agriculture, Resource and Business Advocates, LLP,
Albuquerque, New Mexico, for Plaintiff-Appellant.

Jessica L. Nixon, Robles, Rael & Anaya, P.C., Albuquerque, New Mexico, for
Defendants-Appellees.

_____

Before **TYMKOVICH**, **McHUGH**, and **CARSON**, Circuit Judges.

_____

**CARSON**, Circuit Judge.

_____

The Federal Rules of Civil Procedure describe the discovery process.

Attorneys can obtain discoverable evidence through oral depositions.  Here,

Defendants' counsel asked Plaintiff in a deposition if he committed multiple traffic violations. He could not recall. Responding to summary judgment, however, Plaintiff submitted an affidavit stating he remembered that he violated no traffic laws. His sworn statement purported to establish material factual issues to preclude summary judgment. The district court determined Plaintiff presented a sham affidavit.

Parties generally may not maintain throughout the discovery period that they cannot recall specific events and then remember them at summary judgment absent newly discovered evidence. Allowing such a result would undermine the discovery process. Plaintiff also appeals the district court's grant of a spoliation motion and a summary judgment motion. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

Defendant New Mexico State Police Officer Kevin Smith patrolled Albuquerque's streets just after midnight. He parked his cruiser where Candelaria and Carlisle streets intersect. While there, he observed Plaintiff Craig Gabaldon merge improperly onto Candelaria. Plaintiff merged his motorcycle into wrong-way traffic lanes before correcting himself. Defendant Smith clocked Plaintiff traveling seventy-eight miles per hour in a thirty-five mile-per-hour zone. Plaintiff also failed to use a turn signal.

Defendant Smith activated his lights and siren just before Plaintiff turned into his driveway. Plaintiff pulled the motorcycle next to a truck. Plaintiff began walking

2

toward his house.  Defendant Smith asked Plaintiff to walk to the front of his unit.
Plaintiff ignored this request.  He also refused to provide his name.  Defendant Smith
smelled alcohol on Plaintiff and noticed his blood-shot watery eyes and slurred
speech.

Defendant Smith then arrested Plaintiff for drunk driving.  He attempted to
grab Plaintiff's arm but Plaintiff tensed up, pulled his arms into his chest, and
grabbed onto the truck.  Defendant Smith noticed earlier that Plaintiff had what
looked like a knife on his left hip.  So he used a leverage takedown to detain
Plaintiff.[1]  Once on the ground, Plaintiff secured his left arm rather than place it
behind his back.  Defendant Smith realized then that Plaintiff had a loaded gun rather
than a knife.

Meanwhile, Defendant Officer Kurtis Ward heard about the situation over the
radio and decided to assist Defendant Smith.  When Defendant Ward arrived,
Defendant Smith was still speaking with Plaintiff in the driveway.  Defendant Ward
noticed that Plaintiff had tried to remove his leather motorcycle gear that indicated he
belonged to the Bandidos Motorcycle Club and place it in his truck.  With Defendant
Ward's assistance, Defendant Smith handcuffed Plaintiff's arm behind his back.

Plaintiff filed this civil action in New Mexico state court, alleging First,
Fourth, Fifth, and Fourteenth Amendment constitutional violations as well as various
state-law claims.  Plaintiff maintained during discovery that he believed Defendant

---

[1] Plaintiff does not challenge Defendants' use of force on appeal.

3

Smith improperly stopped him because of his Bandidos Motorcycle Club jacket and patches.  Defendants sought to inspect them. Plaintiff, however, purportedly returned the jacket and patches to the Bandido Motorcycle Club, testifying that they likely burned the requested items.  Defendants moved for sanctions for spoliation of evidence.  The district court granted the motion but stated it would craft an appropriate sanction closer to trial.

Defendants moved for partial summary judgment on Plaintiff's Fourth, Fifth, and Fourteenth Amendment claims.  Plaintiff withdrew his Fifth Amendment claim.  The district court granted summary judgment on the other claims because of qualified immunity.  It concluded that reasonable suspicion supported Defendant Smith's traffic stop and that he had probable cause to arrest Plaintiff for driving while intoxicated.  Finally, the district court concluded that Defendants' use of force was objectively reasonable based on the totality of the circumstances.[2]  Plaintiff appealed.

## II.

Plaintiff raises three issues on appeal.  First, he argues that the district court erred in granting Defendants' motion for sanctions for spoliation.  Next, Plaintiff contends the district court erred in striking Plaintiff's affidavit disputing facts he asserts were material to the summary judgment motions.  Finally, Plaintiff posits the district court erred in granting Defendants' motions for summary judgment.

### 1.

---

[2] Defendants also moved for partial summary judgment covering Plaintiff's remaining claims, but they are not at issue in this appeal.

The district court granted Defendants' motion for sanctions for destroying evidence—specifically, his Bandidos gear. Although the district court deferred imposing sanctions until closer to trial, Plaintiff argues it imposed sanctions without expressly saying so. Plaintiff contends the district court excluded evidence—his affidavit submitted with his response to Defendants' summary judgment motion— that supported his claim Defendant Smith actually stopped him because of his Bandidos gear. Plaintiff argues that the district court implied an adverse inference at summary judgment to override the evidence and alleged retaliatory motive as the actual cause for the stop. Plaintiff says that a person cannot discern from the video that he crossed double yellow lines, sped, and changed lanes improperly.

We review the district court's spoliation order and its decision to impose sanctions—including exclusion of evidence—for abuse of discretion. Xyngular v. Schenkel, 890 F.3d 868, 872 (10th Cir. 2018) (quoting LaFleur v. Teen Help, 342 F.3d 1145, 1149 (10th Cir. 2003)). And here, the district court did not abuse its discretion.

Plaintiff does not appeal the district court's spoliation order's content. Rather, he appeals the district court's imposed sanction. We cannot say the district court abused its discretion. The district court said that it would impose a sanction closer to trial. But it never did. Now, Plaintiff argues that the district court excluded evidence as a sanction. Nothing in the record supports Plaintiff's argument that the district court did so. Indeed, at oral argument, we asked Plaintiff if the district court used an adverse inference against Plaintiff anywhere in its order. Plaintiff said "no" and that

"It's my [Plaintiff's counsel's] adverse inference towards Judge Herrera."  Plaintiff then said the district court felt trapped to believe that the officer was right and Plaintiff was wrong because he was a Bandidos member.

Despite Plaintiff's hunch, nothing in the district court's order, or anywhere else in the record for that matter, suggests it disregarded the case's facts to rule against Plaintiff because of an unstated inference that he was affiliated with the Bandidos.  Plaintiff asserts that the district court overrode the evidence and allegation of Defendant Smith's retaliatory motive as the actual cause for the stop.  But we do not look to Defendant Smith's subjective motives to judge the traffic stop's reasonableness.  Rather, the "sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction."  United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (quoting Delaware v. Prouse, 440 U.S. 648, 661 (1979)).  Here, the officer witnessed Plaintiff cross the double yellow lines, speed, and fail to signal.  Thus, Defendant Smith had reasonable suspicion to make the stop.  The district court did not abuse its discretion.

2.

Next, Plaintiff asserts that the district court erred in striking his affidavit. After Defendants moved for summary judgment, Plaintiff filed a response with an affidavit that contradicted his deposition testimony.  Plaintiff asserts that reviewing Defendant Smith's dash-cam footage for the first time refreshed his memory, and now recalls that he committed no traffic violations.  The district court observed that

6

the footage did not show Plaintiff's full turn onto Candelaria Road, exactly how fast Plaintiff drove, or whether Plaintiff signaled. On appeal, Plaintiff employs a double negative in response: "the video does not **not** support [his] recollection of the events."

A district court may not disregard an affidavit solely because it conflicts with prior sworn statements. Law Co., Inc. v. Mohawk Const. & Supply Co., Inc., 577 F.3d 1164, 1169 (10th Cir. 2009) (quoting Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)). But a district court can disregard a contrary affidavit if it constitutes an attempt to create a sham fact issue. Id. (quoting Franks, 796 F.2d at 1237). We employ a three-part test to determine whether an affidavit creates a sham fact issue, considering whether "(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain." Id. (quoting Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 973 (10th Cir. 2001)). We review for abuse of discretion the district court's decision to exclude affidavits at the summary judgment stage. Id. (citing Mitchael v. Intracorp, Inc., 179 F.3d 847, 854 (10th Cir. 1999)).

Here, Plaintiff's previous testimony occurred during a deposition where counsel cross-examined him. Defendants satisfy the first factor of the test.

As to the second prong, Plaintiff argues that he based his affidavit on new evidence he did not review prior to his deposition. But Defendant Smith's video was

7

not new evidence. More than seven months prior to his deposition, Defendants disclosed the video that Plaintiff says refreshed his memory at summary judgment. Even assuming the evidence was new, Plaintiff still fails. In his deposition, Plaintiff testified he did not remember making the right turn onto Candelaria or how fast he drove. He further testified he quit drinking a month before the deposition. Yet in his affidavit, he said that he did not cross into oncoming traffic, did not exceed the posted speed limit, and did not commit any traffic violations making the right turn onto Candelaria. He also said that he at least signaled with his hand. As to the drinking, Plaintiff now states in his affidavit that he stopped consuming alcohol four months prior to the incident. The video evidence shows no footage of Plaintiff's turn onto Candelaria. The video does not show Plaintiff's speed. Nor does the video show him signaling his turn. Prior to Plaintiff's deposition, the only record evidence explaining what happened that night came from Defendants. At his deposition, Plaintiff did not dispute the critical facts in Defendant Smith's report. And just because the video does not show every detail in Defendant Smith's report does not mean that Defendant Smith did not see those events.

As to the third factor, the affidavit does not attempt to explain confusion at the deposition. Plaintiff said then that he understood the questions counsel posed to him and that he did not need to change or correct any testimony. Plaintiff does not assert that he was confused at his deposition—only that he now remembers things that he forgot. Confusion is not the same as forgetfulness.

The district court did not abuse its discretion in excluding Plaintiff's affidavit. It properly analyzed the <u>Franks</u> factors. Put simply, a litigant cannot go into a deposition, deny remembering key events, then submit an affidavit at summary judgment stating that he reviewed evidence disclosed before his deposition and now remembers material facts to create a genuine dispute. Such a result would undermine the discovery process.

3.

Lastly, Plaintiff contends that the district court erred in granting Defendants' motions for summary judgment because he "clearly disputed the probable cause that Officer Smith manufactured to effectuate the stop." "We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court." <u>BNSF Ry. Co. v. Hiett</u>, 22 F.4th 1190, 1193 (10th Cir. 2022) (quoting <u>US Airways, Inc. v. O'Donnell</u>, 627 F.3d 1318, 1324 (10th Cir. 2010)).

Officers need only have "reasonable suspicion—that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law" to initiate a traffic stop. <u>United States v. Gomez-Arzate</u>, 981 F.3d 832, 838 (10th Cir. 2020) (citing <u>Heien v. North Carolina</u>, 574 U.S. 54, 60 (2014)). "Observed traffic violations necessarily 'afford the quantum of individualized suspicion necessary to ensure that police discretion is sufficiently constrained.'" <u>United States v. Winder</u>, 557 F.3d 1129, 1135 (10th Cir. 2009) (quoting <u>Whren v. United States</u>, 517 U.S. 806, 817–18 (1996)).

Here, the record evidence indicates that Plaintiff violated traffic laws. Plaintiff agrees that no material factual issue exists for those violations without his affidavit.  Because the district court properly excluded the affidavit, the district court correctly concluded that record evidence showed Plaintiff committed multiple traffic violations and that Defendant Smith had an articulable reasonable suspicion to stop Plaintiff.

AFFIRMED.